IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 10-1494-TUC-CKJ (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| (1) Charice Chauntel Gaede;<br>(2) Emmanuel Bermudez Vasquez;<br>(3) Elias Bermudez Vasquez, | |
| Defendants. | |

The District Court referred this case to the Magistrate Judge for consideration of pretrial motions.

Pending before the court is a motion to sever filed by the defendant, Elias Vasquez, on May 19, 2011. (Doc. 87)

The defendant argues his trial should be severed from Emmanuel Vasquez' trial pursuant to Fed.R.Crim.P. 14(a). Magistrate Judge Edmonds held a hearing on the motion on May 20, 2011. The defendant, Charice Gaede, orally joined in the motion at the hearing. (Doc. 90) The Magistrate Judge recommends the motion be denied.

*Facts*:

In March of 2010, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) learned the defendants had been purchasing large quantities of

1 ammunition. Over the past two years, the three defendants' ammunition purchases 2 amounted to approximately $80,000. These purchases were of ammunition commonly 3 trafficked to Mexico.

4 The three defendants were observed receiving several deliveries of ammunition 5 between March and June of 2010. When these deliveries were received, the defendants, 6 Emmanuel Vasquez (Emmanuel) and Elias Vasquez (Elias), were seen in close proximity to 7 a vehicle bearing Sonora, Mexico license plates. Agents learned this vehicle crossed back 8 into Mexico within several hours of one of these ammunition deliveries.

9 On June 3, 2010, after a delivery of ammunition, Emmanuel and Elias were observed 10 driving a van from their residence to the Tucson Mall. The van was picked up by another 11 individual and driven to the Port of Entry in Nogales, Arizona. The van, however, broke 12 down just short of the border, and the driver, a Mexican citizen, crossed back into Mexico 13 on foot. Emmanuel drove to Nogales to check on the vehicle.

14 Agents searched the van and found it carried 9,500 rounds of ammunition. A search 15 of the defendants' residence uncovered additional ammunition and a sawed-off shotgun.

17 **CHARGES:**

18 Count (1) of the indictment charges that the three defendants, Charice Chauntel 19 Gaede, Emmanuel Bermudez Vasquez, and Elias Bermudez Vasquez, attempted to export 20 9,500 rounds of ammunition in violation of 18 U.S.C. 554(a). (Doc. 22)

21 Count (2) alleges that the defendants, Charice Chauntel Gaede, and Emmanuel 22 Bermudez Vasquez, possessed an unregistered shotgun with no serial number and a barrel 23 less than 18 inches long in violation of 26 U.S.C. 5861(d) and 5871. (Doc. 22)

24 //
25 //
26 //

28 Discussion: Relief from Prejudicial Joinder, Rule 14

The defendant, Elias Vasquez (Elias), argues he will be prejudiced if he is forced to stand trial with his co-defendant, Emmanuel Vasquez (Emmanuel). He argues severance pursuant to Fed.R.Crim.P. 14 should be granted. Charice Gaede joins in the motion.

Rule 14 permits the court to sever counts or defendants to avoid prejudice. The rule reads in pertinent part as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a). Because there is a strong preference in the federal system for joint trials, severance will be granted only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. U.S.*, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993). "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.*, p. 540, 938.

At trial, Elias intends to prove that his co-defendant, Emmanuel, "asked to use [his] information under false pretenses and that he had no knowledge of what Emmanuel was doing with the ammunition." (Doc. 87, p. 3) He argues he and Emmanuel have mutually antagonistic defenses and severance is, therefore, appropriate.

Defenses are mutually antagonistic if "the core of the co-defendant's defense is so irreconcilable with the core of [the defendant's] own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *U.S. v. Mayfield*, 189 F.3d 895, 900 (9th Cir. 1999); *see also Zafiro v. U.S.*, 506 U.S. 534, 541-42, 113 S.Ct. 933, 939-40 (1993) (Stevens, J., concurring in the judgment). Mutually antagonistic defenses may arise where circumstance are such that one of the defendants is probably guilty, but it is not clear which one. In such a situation, there is a danger that a defendant may be convicted, not because the prosecution proves the defendant is guilty, but because the prosecution fails to prove the co-defendant is guilty. Mutually antagonistic defenses may also have the practical effect of creating at trial a "second prosecutor" because each co-

defendant will attempt to pin the blame for the offense on the other. *Mayfield*, 189 F.3d at 900.

In this case, Elias and Emmanuel do not have mutually antagonistic defenses. Elias intends to show that he is innocent and Emmanuel is responsible for purchasing the ammunition. There is, however, no indication that Emmanuel intends to show that Elias is the guilty party. He may simply argue that the evidence against him is insufficient to support a conviction. Under these circumstances, the defenses are not mutually antagonistic. There is no danger that the jury will convict Elias purely because they accept Emmanuel's theory of the case. Moreover, there is no danger here that Emmanuel's attorney will become a "second prosecutor" for Elias at the trial. It is possible that *Emmanuel* will be prejudiced by *Elias'* defense, but Emmanuel has not moved for severance and apparently is not overly concerned by this possibility.

Elias further argues there is danger that evidence admitted against Emmanuel will "spillover" on to him. He argues he and Emmanuel have similar names and "the jury might confuse the two defendants and the evidence against each." (Doc. 87, p. 3) "Spillover" is always a concern in any joint trial, but this risk usually can be minimized. Where there is a risk that the jury might use evidence properly introduced against one defendant to improperly infer guilt on the part of another, the court can, and ordinarily will, craft an appropriate limiting instruction "explaining how and against whom certain evidence may be considered." *U.S. v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), *modified by U.S. v. Fernandez*, 425 F.3d 1248 (9th Cir. 2005), *cert. Denied*, 544 U.S. 1043 (2005). Ordinarily, this is sufficient to "reduce or eliminate any possibility of prejudice arising from joint trial." *Id.*; *see also U.S. v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980) ("[O]ur court assumes that the jury listened to and followed the trial judge's instructions."), *cert. Denied*, 449 U.S. 856 (1980).

The evidence in this case is straightforward and uncomplicated. The number of defendants is not particularly large. There is no reason why a jury, having been properly instructed, could not distinguish between evidence admitted against Elias and evidence admitted against Emmanuel. *See, e.g., U.S. v. McLaurin*, 557 F.2d 1064, 1075 (5th Cir.

1977) ("Additionally, the record indicates that the trial court took great pains to avoid potential juror confusion by requiring the witnesses clearly to identify particular defendants when nicknames were used for reference or when a name common to two or more defendants emerged in the testimony.") The possibility of "spill over" does not require severance here. *See also U.S. v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) ("A defendant seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge.").

Under certain circumstances, severance should be granted when the amount of evidence against one defendant is minimal in relation to the evidence against the others. *See U.S. v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971). That does not, however, appear to be the case here. While the government will probably present more evidence against Emmanuel than against Elias, the evidence presented against Elias will not be so minimal that severance is indicated. *See U.S. v. Ruiz,* 446 F.3d 762, 772 (8th Cir. 2006) (Failure to sever was not abuse of discretion where there was sufficient evidence for a conviction and the defendant "was still free to argue the supposed lack of evidence against him."), *cert. Denied*, 549 U.S. 1012 (2006); *but see U.S. v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971) (Failure to sever was an abuse of discretion where the trial transcript numbered 2,300 pages, but less than 50 pages related to the defendant.).

Elias further argues that severance is indicated because he would like to call Emmanuel to testify on his behalf and it would be impossible to call Emmanuel to the stand at a joint trial without his consent.

At the hearing on the motion to sever, the government explained that Emmanuel participated in a "free talk" with the government. (Tr. 17, 25-28) Emmanuel's attorney explained as follows:

> [M]y client did indicate in the free talk that he – he was the one that began involvement in this situation and brought in both of the co-defendants just as a way of actually obtaining more ammunition. . . . So instead of one person purchasing ammunition, he had the ability with their [sic] ID's of three people actually purchasing . . . ammunition. And I did indicate to both counsel for co-defendants that my client was willing and he did in fact speak to the government about the mitigated role that both these co-defendants played.

- 5 -

1  (Tr. 28)

2  "In considering a motion to sever based on the allegation that a co[-]defendant will
3  provide exculpatory testimony, the trial court must weigh several factors, including the good
4  faith of the intent to have a co[-]defendant testify, the probability that the testimony will
5  materialize, the economy of a joint trial, the possible weight and credibility of the predicted
6  testimony, and the degree to which the predicted testimony is exculpatory." *U.S. v. Cuozzo*,
7  962 F.2d 945, 950 (9th Cir. 1992). The weight of these factors in this case does not support
8  severance.

9  First, Elias has not established that Emmanuel intends to testify. Elias did not, for
10  example, provide the court with Emmanuel's affidavit offering to testify on his behalf. *See,*
11  *e.g., U.S. v. Lopez*, 6 F.3d 1281, 1285 (7th Cir. 1993) (Affidavit from the defendant's attorney
12  that the co-defendant's attorney said the co-defendant would be available to testify in a
13  separate trial "presented only a possibility" that the co-defendant would testify.). Elias'
14  counsel suggested at the hearing that if the court granted severance and if Emmanuel were
15  tried first, Elias could use the subpoena power of the court to compel Emmanuel's testimony.
16  But Elias cannot compel Emmanuel to testify that he fraudulently used Elias' credit cards to
17  purchase ammunition. If subpoenaed, Emmanuel could always refuse to testify based on his
18  Fifth Amendment privilege. *See, e.g., Lopez*, 6 F.3d at 1285; *U.S. v. Krasnoff*, 480 F.Supp.
19  723, 730 (D.C.N.Y., 1979) (Motion to sever denied in part because "there is nothing in the
20  [co-defendant's] affidavit indicating that if called as a witness, [he] would waive his Fifth
21  Amendment privilege."). The probability that the Emmanuel's testimony will materialize
22  is low.

23  The exculpatory value of Emmanuel's proposed testimony is also low. Elias would
24  like Emmanuel to testify that he used Elias' credit cards or personal information to purchase
25  ammunition. This testimony alone, however, does not exonerate Elias. If Elias accepted
26  delivery of the ammunition or assisted in the transportation of that ammunition with the
27  knowledge that it was intended for illegal export to Mexico, then Elias would still be guilty
28  as charged in the indictment. Emmanuel's proposed testimony only negates one possible

- 6 -

1 element in the government's case against Elias. It does not put Elias in the clear by any
2 means. *See, e.g., U.S. v. Taren-Palma*, 997 F.2d 525, 533 (9th Cir. 1993) (Motion to sever
3 was denied in part because co-defendant's proffered testimony was not sufficiently
4 exculpatory – it merely contradicted one possible way that the government could have
5 proven its case), *overruled on other grounds by United States v. Shabani*, 513 U.S. 10, 11,
6 115 S.Ct. 382, 383 (1994).

7 The court further notes that Elias can introduce evidence on the credit card issue
8 without Emmanuel's testimony. According to Elias' counsel, "Emmanuel stole [Elias']
9 identification and put it on the internet and used his name – and we actually have – we will
10 be presenting evidence that my client can't use the computer, he doesn't have the capability
11 of using the internet to even make – these orders." (Tr. 23-24) Apparently, Elias will be able
12 to offer his own independent evidence that he did not order any ammunition over the internet.
13 Emmanuel's testimony therefore is not necessary to Elias' defense. *See, e.g., U.S. v.
14 Torres-Maldonado*, 14 F.3d 95, 104 (1st Cir. 1994) (Motion to sever was denied in part
15 because "nothing at the joint trial prevented [the defendants] from putting on evidence from
16 sources other than [their co-defendant] in order to corroborate their contention that they were
17 merely visiting the hotel with regard to car payments."), *overruled on other grounds by
18 Alicea v. U.S.*, 931 F.Supp. 111 (D. P.R. 1996).

19 Finally, the court notes that there is no suggestion as to what Emmanuel would say
20 if he did testify and was asked on cross-examination about the heart of the government's
21 case: What did Elias know about the eventual destination of the ammunition? If Emmanuel
22 thinks Elias knew that the ammunition was going to be illegally exported to Mexico, it is
23 unlikely that Elias would call him to the stand and risk opening the door to this damaging
24 testimony. It is not clear that Elias would call Emmanuel to the stand even if he could.

25 The court concludes that the weight of the *Cuozzo* factors does not support severance.
26 *See U.S. v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992).

27
28 RECOMMENDATION:

In view of the foregoing, it is recommended that after an independent review of the record, the District Court DENY the defendants' motions to sever. (Doc. 87), (Doc. 90)

This Report and Recommendation is being faxed to all counsel on this date. Counsel must file any objections within fourteen days of today's date.

DATED this 3rd day of June, 2011.

_____
Glenda E. Edmonds
United States Magistrate Judge

- 8 -